**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LISA DOLAN COYLE | : | CIVIL ACTION |
| 3120 Maureen Drive | : | |
| Philadelphia, PA 19154 | : | |
| Plaintiff | : | NO: 02-CV-3619 |
| | : | |
| v. | : | |
| | : | |
| AMERCO t/a REPUBLIC WESTERN | : | |
| INSURANCE COMPANY | : | |
| 1 Ivybrook Boulevard, Suite 160 | : | |
| Ivyland, PA 18974 | : | |
| and | : | |
| JAMES WALLETE | : | |
| Defendants | : | |

## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Defendants, Republic Western Insurance Company and James Wallete, move pursuant to Fed. R. Civ. P. 56 for summary judgment on plaintiff's entire Complaint. In accordance with local rule any brief or answer in opposition must be filed and served within fourteen (14) days of filing. Support for this motion is provided in the Memorandum of Law and Exhibits attached hereto.

WHITE AND WILLIAMS LLP
ATTORNEYS FOR DEFENDANTS,
REPUBLIC WESTERN INSURANCE COMPANY
AND JAMES WALLETE

By:_____
Robert G. Devine
Michael W. Horner
1800 One Liberty Place
Philadelphia, PA 19103
(215) 864-7000

DATED: May 16, 2003

Doc#: 178959 v1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LISA DOLAN COYLE | : | CIVIL ACTION |
| 3120 Maureen Drive | : | |
| Philadelphia, PA 19154 | : | |
| Plaintiff | : | NO: 02-CV-3619 |
| | : | |
| v. | : | |
| | : | |
| AMERCO t/a REPUBLIC WESTERN | : | |
| INSURANCE COMPANY | : | |
| 1 Ivybrook Boulevard, Suite 160 | : | |
| Ivyland, PA 18974 | : | |
| and | : | |
| JAMES WALLETE | : | |
| Defendants | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**WHITE AND WILLIAMS LLP**
**ATTORNEYS FOR DEFENDANTS,**
**REPUBLIC WESTERN INSURANCE COMPANY**
**AND JAMES WALLETE**

By:_____
Robert G. Devine
Michael W. Horner
Andrew Podolski
1800 One Liberty Place
Philadelphia, PA 19103
(215) 864-7000

DATED: May 16, 2003

Doc#: 178959 v1

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

I.      Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.     Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

        A.      Summary judgment is appropriate on this record . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.      Plaintiff's Gender Discrimination Claims Under Title VII And The PHRA Should Be Dismissed For Failure To Make Out A *Prima Facie* Case Under Either Hostile Work Environment Or Disparate Treatment Theories . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                1.      Plaintiff's Hostile Work Environment Claim Should Be Dismissed Because Even If Plaintiff's Allegations Are True, They Do Not Constitute A Hostile, Intimidating Or Offensive Work Environment . . . . . . . . . . . . . . . . . . . . . . . . 13

                2.      Plaintiff Fails To Make Out A *Prima Facie* Case Of Disparate Treatment Because She Did Not Demonstrate That Male Employees Were Treated More Favorably . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        C.      Plaintiff's  Discriminatory Retaliation Claims Under Title VII Should Be Dismissed As A Matter Of Law With Regard To James Wallete And For Failure To Present Sufficient Evidence As To Republic Western . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

                1.      Title VII does not provide a cause of action against individual employees and therefore plaintiff's retaliation claim against James Wallete should be dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

                2.      Plaintiff fails to provide sufficient evidence to support a "discriminatory retaliation claim" under Title VII against Republic Western and therefore summary judgment is appropriate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                      a.  Plaintiff did not participate in an activity protected under Title VII. . . . . 19

                      b.  Republic Western did not engage in an adverse employment action . . . . . 19

    c. No causal link exists between protected activity and the adverse
     employment action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

 D. Plaintiff Fails to Present Sufficient Evidence that Defendants, James Wallete and/or
  Republic Western, Aided and Abetted that Alleged Title VII Violation . . . . . . . . . 21

 E. Plaintiff Fails to Present Sufficient Evidence that Defendants James Wallete and/or
  Republic Western, Intentionally Caused Plaintiff to Suffer an Infliction of Emotional
  Distress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

 F. Plaintiff's Defamation Complaint is Time-Barred and Plaintiff Also Fails to Present
  Sufficient Evidence that James Wallete Defamed Her . . . . . . . . . . . . . . . . . . . . . . . 26

  1. Plaintiff's defamation claim is time-barred under the statute of limitations . . . . 26

  2. Plaintiff also fails to present sufficient evidence establishing that the alleged
   statements meet the defamation standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

 G. Plaintiff Cannot Recover Punitive Damages Under The PHRA . . . . . . . . . . . . . . . 29

 H. Plaintiff has Failed To Present Sufficient Evidence to Support a Claim for
  Punitive Damages Under Title VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

III. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## I.    STATEMENT OF FACTS

Plaintiff, Lisa Coyle ("plaintiff"), alleges that she experienced gender discrimination while employed as a litigation manager at defendant, Republic Western Insurance Company's ("Republic Western") Ivyland, Pennsylvania office.  Plaintiff alleges that the discrimination was committed by defendant, James Wallete ("Mr. Wallete"), the claims manager of the Ivyland office and plaintiff's supervisor, from a period of January 3, 2000 until August 28, 2000.  See Exhibit A attached hereto , plaintiff's deposition, page 59, line 10 through page 60, line 14.

Plaintiff began her career with Republic Western as the litigation manager of the Ivyland office on May 18, 1998.  She was hired by the outgoing claims manager in that office, Herb Allen, and Republic Western's assistant vice president of claims, Ray Sillari ("Mr. Sillari").  Mr. Sillari worked out of Republic Western's home office in Phoenix, Arizona.  Mr.Wallete had replaced Mr. Allen as the claims manager in the Ivyland office by the time plaintiff began working at the office. See Exhibit A, page 30, line 17 through page 33, line 21.  Plaintiff had no experience with insurance claims within the insurance industry prior to becoming the litigation manager with Republic Western.  See Exhibit A, page 38, line 2 through page 42, line 6.

Plaintiff was the first person to hold the position of litigation manager at the Ivyland office.  The position required oversight of U-Haul litigation within 13 states, supervising litigation representatives and operating the office along with the claims manager.  See Exhibit A, page 139, lines 16-19 and page 31, lines 14-21.  Plaintiff maintained an approximately 50-60 hour work week throughout her tenure with Republic Western with office hours Monday through Friday.  See Exhibit A, page 119, lines 9-12 and page 158, line 24 through page 159, line 3.

Doc#: 178959 v1

Throughout plaintiff's tenure with Republic Western, the Ivyland office was set up with Mr. Wallete and plaintiff as the only two managers with Mr. Wallete first in command and plaintiff second in command. Underneath the managerial level were approximately five to six supervisors of various units other than plaintiff's litigation unit. The supervisors reported to Mr. Wallete, not plaintiff. Plaintiff had very little input on the supervisor's day-to-day activities, but plaintiff was involved with authorizing reserves beyond a supervisor's authority. Plaintiff also was available to supervisors for general information questions in matters such a settlement negotiations. Plaintiff was responsible for direct supervision of approximately four to five litigation representatives in her unit which required face-to-face daily contact to ensure that the litigation representatives were doing their job. See Exhibit A, page 114, line 23 through page 118, line 9, page 179, line 22 through page 180, line 5 and see Exhibit B attached hereto, Ivyland organizational chart as of March 2, 2000, identified at RW00281.

Plaintiff alleges that her problems did not arise with Mr. Wallete until she returned from a Family and Medical Leave Act (FMLA) leave on January 3, 2000. Plaintiff's FMLA leave commenced in June, 1999 due to a high risk pregnancy and was extended until January 3, 2000 due to surgery. Plaintiff had her second child on September 8, 1999 and her leave was extended due to gallbladder surgery in November, 1999. Plaintiff had no difficulty processing her FMLA leave with the human resources department. See Exhibit A, page 45, line 19 through page 46, line 2, page 179, lines 11-15, page 198, line 15 through page 199, line 1.

Plaintiff contends the following verbal and written communications support her claims:

!    Mr. Wallete told plaintiff she will not want to return to work after her child is born. Plaintiffs deposition page 62, lines 9-16.

! Mr. Wallete told plaintiff he now sees what she was up to in Phoenix alluding to when plaintiff became pregnant. See Exhibit A pg. 62, line 8-14.

! Mr. Sillari also told plaintiff that her time was well spent in Phoenix, again alluding to when plaintiff became pregnant. See Exhibit A page 62, line 19 through page 63, line 1.

! Mr. Wallete told plaintiff "don't bring that baby in here" on her first day back from FMLA leave when she requested to bring the baby to the office. See Exhibit C attached hereto, plaintiff's summary, page 1 and See Exhibit A page 84, lines 7-13.

! Mr. Wallete told plaintiff that she is no fun since she had her baby when plaintiff declined to go out for a drink after work. See Exhibit A, page 84, lines 7-16 and See Exhibit C, page 1, paragraph 3.

! Two supervisors and Mr. Wallete asked plaintiff at a supervisors meeting whether she was pregnant again in reaction to her comments that she was not feeling well. See Exhibit A page 84, line 7-20, page 89, lines 7-15 and See Exhibit C, page 2, paragraph 21.

! Mr. Wallete tells plaintiff to put her thinking cap on. See Exhibit A, page 84, lines 7-10, 21.

! Michael DiBenedetto, a specialty supervisor, said at a business luncheon that plaintiff's husband would prefer to have an *au pair* live with them who was younger and more in shape than plaintiff. See Exhibit A. page 84, line 7-10, lines 21-24

through page 85, line 1, page 91, lines 10-16 and See Exhibit C, page 2, paragraph 13.

! Mr. Wallete stated at a weekly supervisor's meeting with plaintiff and others in attendance that it's just not dealing with the same person after they are pregnant after a supervisor questioned whether a clerical support person had her baby yet.  See Exhibit A. page 85, lines 2-4 and See Exhibit C, page 2, paragraph 20.

! Mr. Wallete and a supervisor, Terry Newman, told plaintiff that she is done her reports first because she is a better typist because females are.  See Exhibit A, page 85, lines 4-8, page 94, lines 4-19 and See Exhibit C, page 2, paragraph 14.

! Mr. Wallete asked plaintiff whether her husband knows she is discussing a flex-time schedule with Mr. Wallete and Mr. Wallete tells plaintiff she should have never had kids while plaintiff is discussing her flex-time proposal with Mr. Wallete in his office with no one else present.  See Exhibit A. page 85, line 10-12 and page 94, line 20 through page 96, line 14 and See Exhibit C, page 2, paragraph 11.

! Mr. Wallete told plaintiff that she needed an attitude adjustment when plaintiff questioned an assigned task with litigation representative Belinda Weedon present. See Exhibit A, page 96, lines 18-21 and See Exhibit C, page 1.

! Supervisor Charlie Beddis stated that he coveted plaintiff's chicken breast meal over the chicken tenders which were ordered by others at a business luncheon and Mr. Wallete replied that he will not touch that statement.  See Exhibit A, page 98, lines 1 through page 99, line 3 and See Exhibit C, page 2, paragraph 18.

! At dinner with the audit team and all supervisors Mr. Wallete stated that nobody asked

plaintiff to bring her kid with her and no one wanted the kid during a business trip to Republic Western's home office in Phoenix . See Exhibit A, page 111, line 22 through page 112, line 11 and See Exhibit C, page 1, paragraph 8.

! At a dinner with an audit team and all supervisors, Mr. Sillari discussed with Mr. Wallete their trip to a topless bar while Mr. Sillari commented that the only true measurement of a woman is bust size. Page 111, line 22 through page 112, line 19 and See Exhibit C, page 2, paragraph 9.

! Mr. Wallete commented on employee Suzanne Schmitz's outfits with sexual implications while in the office and loud enough for Ms. Schmitz to hear. Plaintiff did not witness these comments but heard of them through general office gossip. See Exhibit A, page 231, line 5 through page 232, line 20.

! An unknown member of a group of male employees within the office commented on a female fellow employee's rear-end while she was wearing a skirt and bent down. Plaintiff did not witness this incident but was told about it afterward by another male employee but took no further action. See Exhibit A. page 229, page 10 through page 230, line 14.

! Mr. Wallete stated to plaintiff that he was happy to see she was back while tapping on his head indicating that he was happy that she was mentally back. Deposition, page 340, lines 5-19.

! Mr. Wallete stated in an email to plaintiff that he did not agree with her version of her EDP (employee performance review) that it was due in part to time she missed by

having her baby.  Exhibit A., page 336, lines 6-16 and See Exhibit C, page 2, paragraph 12.

!    Mr. Wallete read aloud at a supervisor's meeting former litigation representative, Michael Linn's negative exit interview comments regarding plaintiff that she was a horrible manager.  Exhibit A., page 259, line 22 through page 260, line 8 and See Exhibit C, page 2, paragraph 17.

!    Mr. Wallete states at an audit team wrap-up meeting that plaintiff had handed in "her version" of her performance review and Mr. DiBenedetto stated it was the fictional account.  Performance reviews (EDP) are prepared by the reviewed party initially.  See Exhibit A, page 99, lines 5-10 and See Exhibit C, page 1.

!    Mr. Wallete told plaintiff that she is not getting anything because she really didn't work at all in response to her question regarding her delayed performance review.  See See Exhibit C, page 1.

!    Mr. Wallete stated in an email that plaintiff's prior email was presumptuous to ask for the status of her delayed performance review.  See See Exhibit C, page 1.

!    Mr. Sillari said aloud and sarcastically after an audit dinner that he will be sure to talk with Mr. Wallete about plaintiff's EDP which she was questioning because it was not yet completed.   See See Exhibit C, page 2, paragraph 10.

Doc#: 178959 v1

! Mr. Wallete commented to plaintiff in front of Mr. Sillari that plaintiff needed to make the reservations for the audit dinner and questioned whether she had done that yet. See See Exhibit C, page 1 paragraph 7.

! Mr. Wallete commented to plaintiff that he doesn't think she should be taking a vacation because she used up so much time already when she confirmed dates for an August vacation. See See Exhibit C, page 2, paragraph 15.

! Supervisor Trevor Newman commented to plaintiff questioning whether the increased volume of litigation was getting too much for her yet when Mr. Wallete asked her to prepare a report explaining this increased volume. See Exhibit C, page 2, paragraph 16.

! SIU supervisor, Bill Artman, told plaintiff that he was told that home office perceived plaintiff in a bad light due to statements Mr. Wallete made to home office. See Exhibit A, page 183, line 4 through page 184, line 24 and See Exhibit C, page 2, paragraph 19.

Plaintiff contends that Mr. Wallete removed the following job responsibilities after she returned from FMLA leave in January 2000:

! Check approval authority in Mr. Wallete's absence was removed and given to another supervisor, Trevor Newman, but restored at a later time. See Exhibit A. page 64, lines 11-17 and See Exhibit C, page 1, paragraph 2A.

! Plaintiff was required to report to a position created during her FMLA leave, speciality supervisor, held by Mr. DiBenedetto. See Exhibit A, page 64, line 19 through page 65,

line 9 and See Exhibit C, page 1, paragraph 5A.

! Mr. Wallete took on some responsibility for hiring defense counsel and assigning files that he did not assume previously. See Exhibit A, page 65, lines 18-21, page 68, line 6 through page 74, line 6 and See Exhibit C, page 1, paragraph 1A.

! Mr. Wallete began interviewing and selecting new individuals coming into plaintiff's litigation unit. See Exhibit A, page 109, lines 1-16 and See Exhibit C, page 1, paragraph 3A.

! Mr. Wallete moved individuals from plaintiff's litigation unit to other units by way of transfer or promotion without plaintiff's input. See See Exhibit C, page 1, paragraph 4A.

! Plaintiff was responsible for reporting results pertaining to litigated claims to the litigation director and home office upon request but Mr. Wallete and another supervisor, Trevor Newman, sent a report to home office without plaintiff's input. See See Exhibit C, page 1, paragraph 6A.

Plaintiff contends the following examples demonstrate that male supervisors were treated more favorably than plaintiff:

! Plaintiff's annual performance review (EDP), which is tied to employees receiving their raises, was delayed resulting in her pay raise taking effect 11 days late. See Exhibit A, page 291, line 23 through page 293, line 1 and See Exhibit A, page 257,

line 18 through page 258, line 2.  Plaintiff baldly alleges that male supervisor's EDP and raises were not delayed.

! Male supervisors were not held to the same standards as plaintiff with regard to responsibilities for files in their units, were not required to keep the diary system, not required to keep note pads regularly, not reprimanded in the least for under-reserving and undersupervised files causing them to result in lawsuits.  See Exhibit A, page 141, line 23 through page 143, line 8.

! Male supervisors "weren't working," were taking two-hour lunches at the Ivyland Cafe on a routine basis, shooting pool at lunch, not being prompted to work as hard as plaintiff, privy to meetings that plaintiff was excluded from on a regular basis, permitted the option of working flex-time, permitted to hire and interview new employees for their unit, weren't questioned on a particular file on a daily basis, weren't watched for their comings and goings and to referred to female clients and claimants they were having difficulty with as "bitches."  See Exhibit A, page 150, line 21 through page 158, line 23.

! Plaintiff also contends that she was treated differently than the male supervisors because she was denied a flex-time schedule which many male supervisors participated in.  This flex-time schedule was implemented during plaintiff's FMLA leave and permitted everyone in the office, including male supervisors, to work 9 long days and take the tenth day off.  Plaintiff contends she requested this flex-time schedule when she returned from FMLA leave in January 2000 but Mr. Wallete denied

it because he told her that she had to be present in the office "all the time right now." Mr. Wallete also told plaintiff she couldn't participate in this flex-time schedule because it required her to pair with a supervisor with responsibilities similar to hers so that at least one  of them was present at all times and that no one was left for her to pair with in the office.  See Exhibit A, page 168, line 8 through page 173, line 4, page 174, lines 14-19 and page 176, lines 7-17.

In May, 2000, plaintiff also requested a more flexible schedule because she was experiencing day care problems which she expected to last approximately 9 months.  She proposed to work either 2 days in the office and 3 days from home or 3 days in the office (with one of the days as a Saturday) in order to fulfill the five-day work week. Mr. Wallete declined to accept plaintiff's flex-time proposal because he wished to have her present in the office, as the only litigation manager, on a more consistent basis than she proposed.  Both Mr. Sillari and John Aye, home office litigation manager, agreed with Mr. Wallete's decision and plaintiff was offered to work a more flexible schedule as a litigation representative.  Although plaintiff was initially interested in this litigation representative position, she ultimately rejected it. See Exhibit D, emails regarding this flex-time proposal and response as well as See Exhibit A, page 175, line 1 through page 176, line 6.

Plaintiff alleges that the aforementioned activities caused her depression-related physical and mental illness which prevented her from working after August 28, 2000. See Exhibit A, page 195, line 18 through page 196, line 20 and page 47, lines 3-10.

Since her departure from Republic Western on August 28, 2000, plaintiff has sought and received workers' compensation benefits as well as disability benefits provided through her employment with Republic Western and she has applied for Social Security Administration Disability Benefits. Prior to her departure on August 28, 2000, plaintiff never attempted contact Republic Western's human resources department concerning the alleged discriminatory activity. Se Exhibit A, page 197, line 21 through page 198, line 1.

On or about June 6, 2002, plaintiff filed the within complaint against Republic Western and Mr. Wallete with counts based upon Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act (PHRA), retaliation, aiding and abetting in violation of the PHRA, intentional infliction of emotional distress and defamation. Plaintiff's gender discrimination is based upon theories of hostile work environment and disparate treatment. See copy of plaintiff's complaint attached hereto as Exhibit E.

## II.    LEGAL ARGUMENT

### A.    Summary Judgment Is Appropriate On This Record.

Summary judgment is appropriate when there is no genuine issue of material fact which is unresolved and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When a motion for summary judgment is made and supported as provided in the rules, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. Fed. R. Civ. P. 56(e). The nonmoving party must show, by affidavits, pleadings, depositions, answers to interrogatories and admissions on file that there is a genuine issue for trial. *Id*.

Doc#: 178959 v1

The Supreme Court has ruled that in motions for summary judgment, a material fact is one which might affect the outcome of the suit under relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. at 248. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, (1986); *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

> **B.      Plaintiff's Gender Discrimination Claims Under Title VII And The PHRA Should Be Dismissed For Failure To Make Out A *Prima Facie* Case Under Either Hostile Work Environment Or Disparate Treatment Theories.**

Plaintiff's complaint seeks recovery against Republic Western for gender discrimination under Title VII of the Civil Rights Act of 1964 (Count I) and under the PHRA (Count II).[1] Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . .." 42 U.S.C. §2000e-2(a)(1). This language is not limited to economic or tangible discrimination. Instead, the phrase "terms, conditions or privileges of employment" displays a congressional intent to "strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatory hostile or abusive environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, (1993) (citations omitted). Plaintiff seeks to prove her Title VII and PHRA claims under hostile work environment and disparate treatment theories. Plaintiff, however, fails to make out a *prima facie* case for either theory.

---

[1] Courts uniformly interpret PHRA gender discrimination claims in conjunction with Title VII and therefore this brief will address plaintiff's gender discrimination under a Title VII analysis only. *See Gautney v. Amerigas Propane, Inc.*, 107 F.Supp. 2d 634, 640 (E.D.Pa. 2000).

1.    **Plaintiff's Hostile Work Environment Claim Should Be Dismissed Because Even If Plaintiff's Allegations Are True, They Do Not Constitute A Hostile, Intimidating Or Offensive Work Environment.**

The Third Circuit requires five factors to be met to support a hostile work environment sexual harassment claim: "(1) the employee suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior." Andrews v. City of Philadelphia.,* 895 F.2d 1469, 1482 (3rd Cir. (Pa.) 1990). Under a hostile work environment theory, an employee must be subjected in her place of work to "sexual harassment so pervasive that it created a hostile, intimidating, or offensive work environment." *Andrews,* 895 F.2d at 1482. Such claims require a showing of severe or pervasive conduct. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). "Simply teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Pittman v. Continental Airlines, Inc.,* 35 F.Supp. 2d 434, 442 (E.D.Pa. 1999). Title VII "does not protect a plaintiff who experiences conduct that is merely offensive or annoying. Rather, Title VII is violated where the conduct is sufficiently severe or pervasive to alter conditions of the victim's employment and create an abusive working environment." *Id.* (citations omitted). "Mistreatment and disrespect unmotivated by the plaintiff's gender does not create a hostile work environment." *Koschoff v. Henderson*, 109 F.Supp. 2d 332, 346 (E.D.Pa. 2000). In addition, conduct motivated by a bad working relationship and personal animosity also does not constitute a hostile work environment. *Id*.

Courts look to the totality of the circumstances to determine whether a hostile work environment

exists, including consideration of the "frequency and severity of the conduct; whether the conduct is physically threatening or humiliating or merely an offensive utterance; and whether the conduct unreasonably interferes with the victim's work performance." *Moore v. Grove North American, Inc.*, 927 F.Supp. 824, 829 (M.D.Pa. 1996) (citing *Pittman v. Correctional Healthcare Solutions, Inc.,* 868 F.Supp. 105, 108 (E.D. Pa. 1994)).

"Snubs and unjust criticisms are not poisonous enough to create an actionable hostile working environment . . . . [H]ostile behavior that does not bespeak an unlawful motive cannot support a hostile work environment claim." *Miller v. Aluminum Co. of America*, 679 F.Supp. 495, 502 (W.D. Pa. 1988), *aff'd*, 856 F.2d 184 (3d Cir. 1988). Hence, although a party may have disliked the plaintiff or treated her poorly, without evidence that the parties' activities were motivated by gender considerations, there is no actionable claim under Title VII. *Moore,* 927 F.Supp. at 829.

Title VII is not designed to purge the workplace of vulgarity. Consequently, the occasional banter, tinged with sexual innuendo, of coarse or boorish workers is not sufficient to create a hostile work environment. Rather, Title VII is intended to protect against sexual assaults and other physical contact, whether amorous or hostile, for which there is no consent express or implied such as uninvited sexual solicitations, intimidating words or acts, obscene language or gestures, or the public display of pornographic pictures. *Baskerville v. Culligan Intern. Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995). Accordingly, "Title VII is not designed to protect the overly sensitive plaintiff." *Bishop v. National R.R. Passenger Corp.*, 66 F.Supp. 2d 650, 664 (E.D. Pa. 1999) (quoting *Harley v. McCoach*, 928 F.Supp. 533, 539 (E.D. Pa. 1996)).

In this case, plaintiff fails to satisfy the first, second and fourth prong of the hostile work environment test and therefore summary judgment as to this theory is appropriate. The first prong, which requires plaintiff

to prove that Mr. Wallete intentionally discriminated against her ***because of her gender*** has not been met. Plaintiff's attempt to causally connect the occasional arguably off-color remark by Mr. Wallete and other male supervisors regarding plaintiff's gender or women in general to instances when plaintiff believes Mr. Wallete removed her authority miserably fails. The handful of remarks offered by plaintiff bear no relationship to plaintiff's perceived changes in her authority. They are simply examples of "occasional banter, tinged with sexual innuendo" which are isolated from the alleged changes to plaintiff's job responsibilities. Consequently, plaintiff has provided insufficient proof that Mr. Wallete's actions with respect to plaintiff were motivated by her gender.

The second prong of the hostile work environment test requires pervasive and regular "discrimination, intimidation, ridicule and insult." The activities contained within plaintiff's proofs cannot reasonably be interpreted as intimidation, ridicule and insult. Furthermore, the handful of events which can arguably be gender-related occurred over an eight-month period and, therefore, were certainly not pervasive and regular.

Plaintiff also fails to satisfy the fourth prong of the hostile work environment test because under the totality of circumstances, a reasonable person in plaintiff's position would not perceive Wallete's activities as gender discrimination. This prong protects defendants from the overly sensitive plaintiff such as Ms. Coyle. A reasonable person would not link the occasional off-color, gender-related banter by males in the office to Mr. Wallete's relatively insignificant occasional removal of plaintiff's job responsibilities.

**2.**    **Plaintiff Fails To Make Out A *Prima Facie* Case Of Disparate Treatment Because She Did Not Demonstrate That Male Employees Were Treated More Favorably.**

Plaintiff must demonstrate the following elements in order to state a *prima facie* case of disparate treatment under Title VII: (1) she is a member of a protected class; (2) she was qualified for a position sought or held; (3) she was discharged from or denied the position; and (4) that non-members of the protected class were treated more favorably.  *Pittman v. Continental Airlines, Inc.*, 35 F.Supp. 2d at 443 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)).  With respect to the fourth element, the plaintiff "must show that male employees did not suffer similar adverse employment actions, despite displaying the same problem which provoked and supported the adverse action suffered by the plaintiff." *Pittman v. Continental Airlines,* 35 F.Supp. 2d at 443.  Consequently, plaintiffs must show that male employees, who did not suffer her alleged adverse employment actions, had employment records sufficiently similar to hers in order to show that those male employees were more favorably treated.  *Id*. at 443-44.

In this case, plaintiff has not met the fourth prong of the disparate treatment test because she has not produced any competent, admissible evidence that male employees with substantially similar job responsibilities were treated more favorably than her in situations similar to those she encountered.  Plaintiff's position of litigation manager was unique within the Ivyland office.  She had more responsibilities and was higher in the chain of command than the male supervisors to whom she has offered comparisons.  Consequently, plaintiff's allegations are futile in that they suggest the  male supervisors, who admittedly had less responsibilities than plaintiff, were treated more favorably by being allowed to take extended lunches, not work as hard and participate in the flex-time schedule of nine days on, one day off.  There is no meaningful comparison between Mr. Wallete's decisions concerning those male supervisors and his decisions concerning plaintiff since supervisors and the litigation manager did not share substantially similar

Doc#: 178959 v1

16

responsibilities within the Ivyland office.

**C.    Plaintiff's Discriminatory Retaliation Claims Under Title VII Should Be Dismissed As A Matter Of Law With Regard To James Wallete And For Failure To Present Sufficient Evidence As To Republic Western**

Count III of plaintiff's complaint includes a claim for "retaliation" against all of the named defendants within this action. Assuming that plaintiff's claim is actually for "discriminatory retaliation" under Title VII of the Civil Rights Act of 1964, summary judgment should be granted with respect to Mr. Wallete as Title VII does not, as a matter of law, provide a cause of action against individual employees. Furthermore, defendant Republic Western respectfully requests this court to grant summary judgment in its favor on this count in its entirety as the evidence produced fails to demonstrate that Republic Western took adverse employment action in response to plaintiff's participation in an activity protected under Title VII.

**1.    Title VII does not provide a cause of action against individual employees and therefore plaintiff's retaliation claim against James Wallete should be dismissed**

Summary judgment must be granted with respect to Mr. Wallete as plaintiff's claim for "discriminatory retaliation" stems from Title VII, which does not provide a direct cause of action against individual employees. *Dici v. Com. of Pa.,* 91 F.3d 542, 552 (3d Cir. (Pa.) 1996).

In *Dici*, the plaintiff-employee brought an action against her supervisor and co-worker, among others. *Id*. at 546. The count at issue within plaintiff's complaint alleged that the supervisor's and co-worker's behavior discriminated against plaintiff based upon sex and race in violation of Title VII. *Id*. In analyzing whether the two defendants were proper parties, the court noted that under federal jurisprudence, "individual employees cannot be held liable under Title VII." *Id.* See also*, e.g., Cross v. State of Ala.*, 49 F.3d 1490, 1504 (11th Cir. 1995); *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994); *Sauers v. Salt Lake Co.*, 1 F.3d

1122, 1125 (10th Cir. 1993); *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587 (9th Cir. 1993). Accordingly, the court dismissed plaintiff's Title VII claims against both the supervisor and the employee. See *Dici*, 91 F.3d at 552.

In the case at hand, Count III of plaintiff's complaint identifies a claim for retaliation against "all defendants." Because this claim arises under Title VII, summary judgment must be granted with respect to Mr. Wallete.

**2.    Plaintiff Fails to Provide Sufficient Evidence to Support a "Discriminatory Retaliation Claim" Under Title VII Against Republic Western and Therefore Summary Judgment is Appropriate.**

Summary judgment should also be granted with respect to Republic Western under plaintiff's retaliation claim because the evidence fails to establish that plaintiff engaged in an activity that is expressly protected by Title VII and that Republic Western took adverse employment action in direct response to any protected activity.

Section 704(a) of Title VII, 41 U.S.C. Sec. 2000e-3(a) protects "discriminatory retaliation" by making it unlawful for an employer to discriminate against an employee "because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding or hearing under [Title VII]." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir. (Pa.) 1997). A three-pronged standard has emerged within the Third Circuit with regard to Title VII retaliation claims. Specifically, the employee-plaintiff must demonstrate that (1) she engaged in an activity protected under Title VII; (2) her employer took an adverse employment action after or at the same time as the employee's protected activity; and (3) there was a causal link between the protected activity and the adverse action. See *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. (N.J.) 2000). In the matter at hand, the evidence fails to meet any of these three

elements.

**a.  Plaintiff did not participate in an activity protected under Title VII.**

There is no evidence suggesting that plaintiff participated in an action protected under Title VII of the Civil Rights Act of 1964. Indeed, plaintiff merely alleges that "[w]hen plaintiff complained of the illegal acts of defendant, discrimination and other negative acts by defendant against plaintiff increased." See Count III, paragraph 31 of plaintiff's complaint, attached hereto as Exhibit E.  Limiting her support for the retaliation claim to the above charge alone, plaintiff fails to meet the first prong of the *Farrell* standard as plaintiff has not come forward with proof of retaliation for an activity she engaged in that was protected by Title VII.

**b.    Republic Western did not engage in an adverse employment action.**

Even if this court were to find that plaintiff did, in fact, participate in some form of activity protected under Title VII, summary judgment must still be granted in Republic Western's favor as the evidence discovered thus far fails to demonstrate under the second element of the *Farrell* test that defendant engaged in an "adverse employment action" in response to Coyle's protected activity.

Within the Third Circuit, plaintiffs alleging Title VII retaliation must show that the defendant-employer engaged in some form of adverse employment action in conjunction with their participation in the protected activity addressed by the first prong of the *Farrell* standard. 42 U.S.C. Sec. 2000e-2(a) makes it an "unlawful employment practice"

> to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation terms, conditions, or privileges of employment, because of such individual's . . . sex . . . or to limit, segregate or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's . . . sex

. . . (emphasis added).

Accordingly, retaliatory conduct other than discharge or refusal to hire is protected by Title VII **only** if it alters the employee's "compensation, terms, commissions, or privileges of employment," deprives him or her of "employment opportunities," or "adversely affects his [or her] status as an employee." *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996). Thus, it follows that "not everything that makes an employee unhappy" qualifies as retaliation, for "[o]therwise, minor and even trivial employment actions that 'an irritable, chip on the shoulder employee did not like would form the basis of a discrimination suit.'" *Id.* (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). The Seventh Circuit even suggests that "anger, irritation, dirty looks, even the silent treatment can cause distress, but do not constitute materially adverse employment action." *McDonnell v. Cisneros*, 84 F.3d 256, 258 (7th Cir. 1996).

In light of the above, the actions plaintiff charges Republic Western with do not amount to adverse employment action. Even if, as plaintiff alleges, Republic Western, by and through its supervising employees, made mildly offensive comments or even slight reductions in  some of plaintiff's work responsibilities, such actions still are not "adverse" as they do not alter plaintiff's compensation, terms, commissions, or employment privileges are affected.

### c. No causal link exists between protected activity and the adverse employment action.

Because plaintiff cannot demonstrate that she engaged in an activity protected under Title VII and that Republic Western took adverse employment actions against her, it follows that the third requirement under the *Farrell* standard--namely, proof of a causal link between the protected activity and the adverse employment action--does not exist. Accordingly, Republic Western respectfully requests that summary judgment be granted in its favor.

**D.      Plaintiff Fails to Present Sufficient Evidence that Defendants, James Wallete and/or Republic Western, Aided and Abetted that Alleged Title VII Violation.**

Count IV, paragraph 34 of plaintiff's complaint alleges that Republic Western, "acting by and through its employees and agents, and James Wallete, aided and abetted, incited, compelled, or coerced each other to act in violation of the Pennsylvania Human Relations Act." Likewise, paragraphs 35-38 further allege that Republic Western and Mr. Wallete "joined together" with various "other managers," none of whom are named in the complaint, to aid and abet the alleged commission of various other torts. See Count IV, paragraphs 34-38 of plaintiff's complaint, attached hereto as Exhibit E. Summary judgment, however, must be granted with regard to Mr. Wallete as the bulk of the evidence produced merely points to plaintiff's allegation that Mr. Wallete *directly* engaged in the supposedly tortious conduct, rather than aided and abetted others in doing so. Furthermore, the aiding and abetting claims against Republic Western also cannot survive summary judgment as corporate entities cannot logically aid and abet in the commission of a Title VII violation when that entity is also the subject of a direct Title VII claim. See, e.g. *Destefano v. Henry Mitchell*, 2000 W.L. 433993, at *2 (E.D. Pa. 2000).

Title VII, 42 U.S.C. §2000e, *et seq.*, and §955(a) of the PHRA, 43 P.S. renders it unlawful for an employer to discriminate against an employee based on certain enumerated factors, such as race, age, and gender. See, e.g., *Kohn v. Lemmon Co.*, 1998 W.L. 67540 (E.D. Pa. 1998)(citing *Dici*, 91 F.3d at 552). Under §43 P.S. 955(e), Pennsylvania goes a step further by forbidding:

> [a]ny person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful

> discriminatory practice. *Id.* See also *Glickstein v. Neshaminy
> School Dist.*, 1997 W.L. 660636, *11 (E.D. Pa. 1997).

Accordingly, §955(e) of the PHRA augments the protection afforded under Title VII, which holds only employers liable for discrimination while exempting individual employees from liability. See generally *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061 (3d Cir. (Del.) 1996); *Dici*, 91 F.3d at 552. Thus, in the appropriate factual scenario, an individual supervisory employee can be held liable under an aiding and abetting liability theory pursuant to. 955(e) for his or her own direct acts of discrimination or for failing to take action to prevent further discrimination by an employee under his supervision. See *Dici*, 91 F.3d at 552-53.

Though plaintiff's complaint certainly alleges that Mr. Wallete aided and abetted in the commission of various torts, all of the evidence produced so far only charges Mr.Wallete with ***direct and first-hand*** conduct that allegedly violates Title VII, PHRA, and common law. Indeed, none of the evidence suggests that Mr. Wallete took a passive, secondary role with regard to her complained-of activity that could support a claim for aiding and abetting. Accordingly, Mr. Wallete respectfully requests this court to grant summary judgment in his favor with regard to this count.

Furthermore, Republic Western also seeks summary judgment for this count as a corporate entity that is the subject of a direct Title VII, PHRA, and common law suit cannot also aid and abet in the commission of the same torts. Indeed, as Title VII establishes liability solely for employers, Sec. 955(e) establishes accomplice liability for individual employees who aid and abet a § 955(a) violation by their employer. See 43 Pa. Cons. Stat. Ann §955(e) (Purdon Supp.1997) (providing liability for employees who "aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice"). However, logicdictates that §955(e) of the PHRA, which is designed to provide recourse to plaintiffs who

cannot sue individual supervisors under Title VII, does not also give rise to a separate cause of action for

aiding and abetting against the corporate employer who *is* subject to Title VII.

> **E.    Plaintiff Fails to Present Sufficient Evidence that Defendants, James Wallete and/or Republic Western Intentionally Caused Plaintiff to Suffer an Infliction of Emotional Distress**

Count V of plaintiff's complaint alleges that James Wallete and Republic Western should be found

liable for intentional infliction of emotional distress (IIED) with regard to plaintiff. Defendants, however,

respectfully request that summary judgment be granted in their favor on this count as none of the conduct

taken by Mr. Wallete or Repuclic Western rise to the level of "outrageousness" required under Pennsylvania's

IIED standard.

In order to state a claim for IIED under Pennsylvania common law, the plaintiff must establish four

elements: (1) the conduct of the defendant must be intentional or reckless; (2) the conduct must be extreme

and outrageous; (3) the conduct must cause emotional distress; and (4) the distress must be severe. *Chuy v.

Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. (Pa.) 1979). In Pennsylvania, IIED cases

within the employment context have been few as "it is extremely rare to find conduct in the employment

context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of

intentional infliction of emotional distress." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. (Pa.)

1988). Indeed, for an IIED claim to survive summary judgment in Pennsylvania, "[t]he conduct must be so

outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized society." *Buczek v. First Nat. Bank of Mifflington*,

366 Pa. Super. 551, 558 (1987). Furthermore, the Restatement also explains that "[i]t has not been enough

that the defendant has acted with intent which is tortious or even criminal or that he has intended to inflict

emotional distress or even that his conduct has been characterized by 'malice' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." See Restatement (Second) of Torts, §46, comment (d). Cases which have found a sufficient basis for IIED claims have presented only the most horrendous conduct. See, e.g., *Pappieves v. Lawrence*, 437 Pa. 373 (1970)(defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field only to be discovered two months later by the boy's parents); *Banyas v. Lower Bucks Hospital*, 293 Pa. Super. 122 (1981)(defendant intentionally fabricated records to suggest that plaintiff had killed a third party which ultimately led to plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979)(defendant's team physician released to press information that plaintiff was suffering from a terminal disease when physician knew such information was false).

   With specific regard to employment-related IIED claims, the Eastern District of Pennsylvania recently granted a defendant's motion to dismiss the former employee's claim for IIED, finding that the actions taken by the employer did not meet the Pennsylvania standard for the tort. In *De Wyer v. Temple University*, 2001 WL 115461 (E.D. Pa. 2001), the plaintiff alleged that her employer intentionally inflicted emotional distress on her by (1) berating her for parking in handicapped spaces despite being handicapped and having a handicapped parking placard; (2) allowing another non-supervisory employee to park in those same spaces without a handicapped license plate or placard; (3) citing plaintiff with insubordination; (4) suspending plaintiff for three days without pay; (5) retaliating against plaintiff by not allowing her to wear sneakers at work although other employees were allowed to do so; (6) accusing plaintiff of sleeping on the job; and (7) denying plaintiff vacation and personal time. *Id.* at *6. Despite the employer's admittedly harsh conduct, the court found that in light of the Third Circuit's *Cox* decision, *supra*, "[g]ranting every inference to plaintiff,

and keeping in mind the chary approach taken with IIED claims, the court does not believe the facts plaintiff alleges rise to the level of atrociousness necessary to state a cognizable claim." *Id.*

Similarly, with regard to employment-related IIED stemming from sexual harassment, a charge also contained within Lisa Coyle's allegations of wrongdoing, courts have held that "[a]s a general rule, sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1487 (3d Cir. (Pa.) 1990). Indeed, a plaintiff must also demonstrate that there was specific retaliation for her turning down sexual propositions. *Id.* Thus, "[o]ffensive comments and gestures in the workplace, even though sexually explicit, are not enough to satisfy the *Andrews*' extra requirement of sexual propositions." *Waserman v. Potamkin Toyota, Inc.*, 1998 WL 744090, at *3 (E.D.Pa. 1998).

Demonstrating exactly how high the standard for "outrageousness" is in Pennsylvania, the state's highest court recently held that despite plaintiff's exposure to "highly offensive and unacceptable conduct" by her supervisor, the standard for IIED was still not met. *Hoy v. Angelone*, 554 Pa. 134, 153 (1998). In *Hoy*, the plaintiff's supervisor made sexually suggestive remarks such as "let's go to the Budget and I'll pay the motel, you bring the pizza" and "if you've ever had sex with me, you wouldn't want anybody else." *Id.* at 156. Even more disturbing, the supervisor, on various occasions, would touch the back of plaintiff's knee, tell vulgar, sexually explicit jokes, post sexually suggestive pictures, and even directly call the plaintiff "a fucking cunt, a fucking pussy, a bitch." *Id.* at 153, 155. Notwithstanding this conduct, the court held that such behavior "was not so outrageous . . . that would allow for recovery under this most limited of torts." *Id.* at 153.

In the matter at hand, the conduct allegedly taken by Mr. Wallete and Republic Western also does not

raise to level of atrociousness required for IIED claims within this jurisdiction.

**F.      Plaintiff's Defamation Complaint is Time-Barred and Plaintiff Also Fails to Present Sufficient Evidence that James Wallete Defamed Her.**

Summary judgment also must be granted in Mr. Wallete's favor with regard to Count VI of plaintiff's complaint for defamation as it is time-barred under Pennsylvania's one-year statute of limitations for defamation. Alternatively, this count must also be summarily denied as the alleged statements made by Mr. Wallete do not meet the Pennsylvania's common law standard for defamation.

**1.      Plaintiff's Defamation Claim is Time-Barred Under the Statute of Limitations**.

Plaintiff's complaint alleges both federal causes of action, such as Title VII violations, and state causes of action, such as defamation and intentional infliction of emotional distress. Under Pennsylvania statutory law, the statute of limitations for defamation is one year. See 42 Pa.Con.Stat.Ann §5523(1) (West 1981 & Supp.2000). See also *Trammell v. Aston Const. Co.*, 1997 WL 299385 (E.D. Pa. 1997). Though plaintiff's defamation claim was brought in conjunction with the federal ones, the statute of limitations period is not tolled. See *Bacone v. Philadelphia Housing Auth.*, 2001 WL 748177 (E.D. Pa. 2001). In *Bacone*, the plaintiff brought a state tort claim for intentional infliction of emotional distress along with various federal Title VII claims. By the time plaintiff filed suit, however, the two-year limitation period for the IIED claim had lapsed. The defendant-employer argued that the limitations period began to run immediately after the last possible date in which plaintiff was subject to any behavior potentially constituting intentional infliction of emotional distress. Plaintiff, on the other hand, argued that the limitation period was tolled, and thus did not begin until the date when she filed her administrative claim with the Pennsylvania Human Relations Committee (PHRC).

Dismissing plaintiff's IIED claim, the Eastern District held that the statute of limitations for plaintiff's

Doc#: 178959 v1

federal court filing of the state claims was not tolled by her timely joint filing with the PHRC and EEOC. See *Id*. at *4. In so holding, the court relied on *Johnson v. R.R. Exp. Agency*, 421 U.S. 454, 465 (1975), a case in which the United States Supreme Court held that the statute of limitations for a § 1981 claim was not tolled by the processing of a Title VII claim before the EEOC. *Id.* Furthermore, the *Bacone* court noted the general, well-established "requirement that a plaintiff initiate suit within the statutory period although an administrative proceeding is ongoing." *Mincin v. Shaw Packing Co.*, 989 F.Supp. 710, 719 (W.D.Pa. 1997)(holding that "the Pennsylvania Supreme Court would not toll the statute of limitations for related state tort claims because of the pendency of a discrimination charge before the PHRC/EEOC"); *Larmore v. RCP/JAS, Inc.*, 1998 WL 372647 (E.D.Pa. 1998)(holding defamation action brought in conjunction with Title VII claims time-barred under the one-year statute of limitations).

In the matter at hand, plaintiff's complaint states that all of the allegedly defamatory conduct occurred during the time she worked at Republic Western. Thus, giving plaintiff the most latitude possible, the last date on which the alleged discrimination could potentially occur was August 28, 2000, the last day of plaintiff's employment at Republic Western. *Larmore*, 1998 WL at *6 (similarly noting that "[t]he latest possible time at which [plaintiff] knew, or with the exercise of reasonable diligence, should have known, of the facts underlying his defamation claim was the date of his termination). Accordingly, the limitations period for Lisa Coyle's defamation action lapsed on August 28, 2001. Because her complaint was not filed until June 6, 2002, defendants respectfully request that summary judgment be granted on their behalf as plaintiff's defamation claim is time-barred.

**2.  Plaintiff also fails to present sufficient evidence establishing that the alleged**

**statements meet the defamation standard**

Notwithstanding that plaintiff's defamation claim is time-barred under the Pennsylvania statute of limitations, summary judgment should alternatively be granted in defendants' favor because the evidence produced to date does not suggest defamation under the Pennsylvania standard for this tort.

To state a cause of action for defamation under Pennsylvania law, a plaintiff has the burden of proving (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of any conditional privilege. 42 Pa.C.S. §8343. See *Krieski v. Schott Glass Technologies, Inc.*, 426 Pa.Super. 105, 116 (1993). In Pennsylvania, "[a] statement is defamatory if it tends to harm an individual's reputation so as to lower him in the estimation of the community or deter third persons from associating with or dealing with him." *Zartman v. Lehugh County Humane Society*, 333 Pa.Super. 245, 250 (1984).

Pennsylvania courts have held that certain types of communications, although undoubtedly offensive and derogatory to the plaintiff, simply do not rise to the level of defamation. For example, expressions of opinion are clearly not actionable in Pennsylvania. See, e.g., *Baker v. Lafayette College*, 350 Pa.Super. 68, 78 (1986), *aff'd.*, 516 Pa. 291 (1987). Likewise, statements which are "no more that rhetorical hyperbole" or "a vigorous epithet" are specifically not defamatory. *Redding v. Carlton,* 223 Pa.Super. 136, 139 (1972). Likewise, communications do not meet the Pennsylvania standard simply because they annoy or embarrass a person. See *Maier v. Maretti*, 671 A.2d 701, 704 (Pa.Super. 1995). *W. Prosser & Keeton,* THE LAW OF TORTS Sec. 111, at 776 (4th ed. 1984)(a certain amount of vulgar name calling is tolerated, on the theory that

NAV

it will necessarily be understood to amount to nothing more"); *McGowen v. Prentice*, 341 So.2d 55 (La. App. 1976)(finding that "casual remarks made in informal conversation, even if they include unflattering words, do not constitute actionable defamation").

With regard to plaintiff's claim for defamation, the comments she alleges Mr. Wallete made are no more than informal, mildly offensive remarks. Indeed, taking every allegation made by plaintiff as true, the same does not amount to actionable defamation.

### G.    Plaintiff Cannot Recover Punitive Damages Under The PHRA.

Punitive damages are not available to plaintiff suing under the PHRA. *Pittman v. Continental Airlines, Inc.,* 35 F.Supp.2d. , 445 (E.D.Pa. 1999) (citing *Hoy v. Angelone*, 554 Pa. 134 (1998)(holding "we hold that punitive damages are not available under the [PHRA].")). Since PHRA is Pennsylvania state law, federal courts are constrained to apply it as interpreted by the Pennsylvania Courts. *Id.* Consequently, plaintiff's second count pursuant to PHRA, to the extent it seeks punitive damages, must be dismissed.

### H.    Plaintiff has Failed To Present Sufficient Evidence to Support a Claim for Punitive Damages Under Title VII.

Though the PHRA does not allow for punitive damages, Title VII of the Civil Rights Act of 1964 does, albeit in limited circumstances. Specifically, a defendant can be subject to punitive damages for discrimination when his "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535 (1999). Defendant must be shown to have acted with a "'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'" *Id.* (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Notwithstanding this standard, the Supreme Court noted that "[t]here will be

circumstances where intentional discrimination does not give rise to punitive damages liability." *Id.* at 546. Indeed, there can be no punitive damages where the employer is simply unaware of the relevant federal protection, where he discriminates under the distinct belief that his actions are lawful, or where the underlying theory of discrimination is novel or poorly recognized. *Id.* at 536-37.

In the case at hand, plaintiff has failed to present sufficient evidence to support a jury finding that Mr. Wallete was motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others none of the evidence. Consequently, defendants respectfully request that they be granted summary judgment with respect to all claims for punitive damages.

## III.    CONCLUSION

Based upon the aforementioned arguments, defendants, Republic Western Insurance Company and James Wallete, respectfully request that this Honorable Court grant them summary judgment as to all counts of plaintiff's complaint.

Respectfully submitted,
**WHITE AND WILLIAMS LLP**
**Attorneys for Defendants**,
**Republic Western Insurance**
**Company and James Wallete**

BY:  _____
Robert G. Devine
Michael W. Horner
Andrew Podolski
1800 One Liberty Place
Philadelphia, PA 19103
(215) 864-7000

DATED: May 16, 2003

Doc#: 178959 v1

30

## CERTIFICATE OF SERVICE

I, MICHAEL W. HORNER, hereby certify that on this 16th day of May, 2003, a true and correct copy of the foregoing Motion for Summary Judgment was served via facsimile and regular mail, upon the following counsel of record:

Linda P. Falcao, Esquire
238 Harrogate Road
Wynnewood, PA 19096


_____
Michael W. Horner

Doc#: 178959 v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LISA DOLAN COYLE | : | CIVIL ACTION |
| 3120 Maureen Drive | : | |
| Philadelphia, PA 19154 | : | |
| Plaintiff | : | NO: 02-CV-3619 |
| | : | |
| v. | : | |
| | : | |
| AMERCO t/a REPUBLIC WESTERN | : | |
| INSURANCE COMPANY | : | |
| 1 Ivybrook Boulevard, Suite 160 | : | |
| Ivyland, PA 18974 | : | |
| and | : | |
| JAMES WALLETE | : | |
| Defendants | : | |

## ORDER

AND NOW, this _____ day of _____, 2003, upon consideration of defendants' Motion for

Summary Judgment, and plaintiff's response thereto, it is hereby **ORDERED** that the motion is granted. The

Complaint is hereby dismissed with prejudice.

**SO ORDERED,**

_____
U.S.D.J.

Doc#: 178959 v1