# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA DOLAN COYLE | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | 02-CV-3619 |
| v. | : | |
| | : | |
| AMERCO t/a REPUBLIC WESTERN | : | |
| INSURANCE COMPANY and JAMES | : | |
| WALLETTE | : | |
| | : | |
| Defendant | : | |
| | : | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Republic Western Insurance Company, moves pursuant to Fed. R. Civ. P. 56 for

summary judgment on plaintiff's Complaint with respect to Title VII of Civil Rights Act of 1964 and the

Pennsylvania Humans Relations Act.   In accordance with local rule any brief or answer in opposition

must be filed and served within fourteen (14) days of filing.  Support for this motion is provided in the

Memorandum of Law and Exhibits attached hereto.

WHITE AND WILLIAMS LLP
ATTORNEYS FOR DEFENDANTS,
REPUBLIC WESTERN INSURANCE COMPANY
AND JAMES WALLETTE

By:_____
          Robert G. Devine, Esq.
          Michael W. Horner, Esq.
          1800 One Liberty Place
          Philadelphia, PA 19103
          (215) 864-7000

DATED: July 12, 2005

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA DOLAN COYLE | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | 02-CV-3619 |
| v. | : | |
| | : | |
| AMERCO t/a REPUBLIC WESTERN | : | |
| INSURANCE COMPANY and JAMES | : | |
| WALLETTE | : | |
| | : | |
| Defendant | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WHITE AND WILLIAMS LLP
ATTORNEYS FOR DEFENDANTS,
REPUBLIC WESTERN INSURANCE COMPANY
AND JAMES WALLETE

By: _____
Robert G. Devine, Esq.
Michael W. Horner, Esq.
1800 One Liberty Place
Philadelphia, PA 19103
(215) 864-7000

DATED: July 12, 2005

DOCS_NJ 229831v1

# TABLE OF CONTENTS

Table of Authorities ............................................................................................ii

I.    Statement of Facts .......................................................................................1

II.   Legal Argument.............................................................................................7

    A.    Plaintiff's Title VII Claims Against The Defendant, Republic Western Insurance Company Should Be Dismissed Pursuant To The *Ellerth/Faragher* Affirmative Defense...................................................................................7

        1.    The *Ellerth/Faragher* Affirmative Defense Is Available To Republic Western Insurance Company Because Plaintiff's Alleged Constructive Discharge Was Not Precipitated By A Tangible Employment Action Taken By James Wallete.......................................................................11

        2.    Republic Western Had Installed A Readily Accessible And Effective Policy For Reporting And Resolving Sexual Harassment Complaints........................................................................................ 12

        3.    Plaintiff Unreasonably Failed To Avail Herself Of Republic Western's Policy For Harassment Reporting And Resolving Sexual Harassment Complaints........................................................................................13

        4.    Dismissing Plaintiff's Title VII Claims and PHRA Claims Pursuant To The *Ellerth/Faragher* Affirmative Defense Will Further Policies Of Preventing Future Harassment, Avoiding Consequences And Mitigating Damages.....................................................................15

    B.    Summary Judgment Is Appropriate On This Record............................15

III.   Conclusion......................................................................................................18

DOCS_NJ 229831v1

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986)...........................16

Andrews v. City of Philadelphia., 895 F.2d 1469 (3d Cir. 1990)........................................8

Barra v. Rose Tree Media School District, 858 A.2d 206 (Pa. Cmwlth. Ct. 2004)........9,11

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998) ………...............8,10,11,12, 15

Cardenas v. Massey, 269 F.3d 251 (3d Cir. 2001) ..............................................................8

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ..................................................................16

Gautney v. Amerigas Propane, Inc., 107 F. Supp. 2d 634 (E.D.Pa. 2000).........................7

Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993) ..........................................................8

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986)...............16

Pennsylvania State Police v. Suders, 542 U.S. 129, 124 S. Ct. 2342, 159 L. Ed. 2d
    204 (2004)…………………………………………………………...............7, 8, 9, 10

Wisniewski v. Johns-Manville Corp., 812 F.2d 81 (3d Cir. 1987)....................................16

## STATUTES

42 U.S.C. §2000e-2(a)(1)......................................................................................................7

Fed. R. Civ. P. 56.........................................................................................................1, 15,
                                                                                                                    16

## MISCELLANEOUS

The Restatement (Second) of Agency (1957)……………………………………………10

DOCS_NJ 229831vtoa

## I.    STATEMENT OF FACTS

Plaintiff, Lisa Coyle ("plaintiff"), alleges that she experienced gender discrimination while employed as a litigation manager at defendant, Republic Western Insurance Company's ("Republic Western") Ivyland, Pennsylvania office.  Plaintiff alleges that the discrimination was committed by defendant, James Wallete ("Mr. Wallete"), the claims manager of the Ivyland office and plaintiff's supervisor, from a period of January 3, 2000 until August 28, 2000.  See Exhibit A, attached hereto, plaintiff's deposition, page 59, line 10 through page 60, line 14. Plaintiff also claims that the discrimination was committed by Ray Sillari ("Mr. Sillari"), Mr. Wallete's supervisor who worked out of Republic Western's home office in Phoenix, Arizona. Exhibit A, page 62, line 19 through page 63, line 1; page 111, line 22 through page 112, line 19; page 84, lines 7-13; page 175, line 1 through page 176, line 6; Exhibit B, plaintiff's summary, page 1 and page 2, paragraph 10.

Plaintiff began her career with Republic Western as the litigation manager of the Ivyland office on May 18, 1998.  She was hired by the outgoing claims manager in that office, Herb Allen, and Republic Western's assistant vice president of claims, Mr. Sillari.  Mr.Wallete had replaced Mr. Allen as the claims manager in the Ivyland office by the time plaintiff began working at the office. See Exhibit A, page 30, line 17 through page 33, line 21.  Plaintiff had no experience with insurance claims within the insurance industry prior to becoming the litigation manager with Republic Western.  See Exhibit A, page 38, line 2 through page 42, line 6.

1

Plaintiff was the first person to hold the position of litigation manager at the Ivyland office. The position required oversight of U-Haul litigation within 13 states, supervising litigation representatives and operating the office along with the claims manager. See Exhibit A, page 139, lines 16-19 and page 31, lines 14-21. Plaintiff maintained an approximately 50-60 hour work week throughout her tenure with Republic Western with office hours Monday through Friday. See Exhibit A, page 119, lines 9-12 and page 158, line 24 through page 159, line 3.

Throughout plaintiff's tenure with Republic Western, the Ivyland office was set up with Mr. Wallete and plaintiff as the only two managers with Mr. Wallete first in command and plaintiff second in command. Underneath the managerial level were approximately five to six supervisors of various units other than plaintiff's litigation unit. The supervisors reported to Mr. Wallete, not plaintiff. Plaintiff had very little input on the supervisor's day-to-day activities, but plaintiff was involved with authorizing reserves beyond a supervisor's authority. Plaintiff also was available to supervisors for general information questions in matters such a settlement negotiations. Plaintiff was responsible for direct supervision of approximately four to five litigation representatives in her unit which required face-to-face daily contact to ensure that the litigation representatives were doing their job. See Exhibit A, page 114, line 23 through page 118, line 9, page 179, line 22 through page 180, line 5.

Plaintiff alleges that her problems did not arise with Mr. Wallete until she returned from a Family and Medical Leave Act (FMLA) leave on January 3, 2000. Plaintiff's FMLA leave commenced in June, 1999 due to a high risk pregnancy and was extended until January 3, 2000

2

due to surgery.  Plaintiff had her second child on September 8, 1999 and her leave was extended due to gallbladder surgery in November, 1999.  Plaintiff had no difficulty processing her FMLA leave with the human resources department.  See Exhibit A, page 45, line 19 through page 46, line 2, page 179, lines 11-15, page 198, line 15 through page 199, line 1.

Plaintiff contends that Mr. Wallete removed the following job responsibilities after she returned from FMLA leave in January 2000 and that these activities were a result of gender discrimination:

- Check approval authority in Mr. Wallete's absence was removed and given to another supervisor, Trevor Newman, but restored at a later time.  See Exhibit A. page 64, lines 11-17 and See Exhibit B, page 1, paragraph 2A.

- Plaintiff was required to report to a position created during her FMLA leave, specialty supervisor, held by Michael DiBenedetto. See Exhibit A, page 64, line 19 through page 65, line 9 and See Exhibit B, page 1, paragraph 5A.

- Mr. Wallete took on some responsibility for hiring defense counsel and assigning files that he did not assume previously.  See Exhibit A, page 65, lines 18-21, page 68, line 6 through  page 74, line 6 and See Exhibit B, page 1, paragraph 1A.

- Mr. Wallete began interviewing and selecting new individuals coming into plaintiff's litigation unit.  See Exhibit A, page 109, lines 1-16 and See Exhibit B, page 1, paragraph 3A.

3

- Mr. Wallete moved individuals from plaintiff's litigation unit to other units by way of transfer or promotion without plaintiff's input. See Exhibit B, page 1, paragraph 4A.

- Plaintiff was responsible for reporting results pertaining to litigated claims to the litigation director and home office upon request but Mr. Wallete and another supervisor, Trevor Newman, sent a report to home office without plaintiff's input. See Exhibit B, page 1, paragraph 6A.

During plaintiff's entire tenure with the company, Republic Western had in place a policy prohibiting sexual harassment which directed its employees to report sexual harassment by supervisors to either a higher supervisor, the Chairman of the Board, or the vice president of U-Haul Human Resources in Phoenix, Arizona. The policy instructs employees to report harassment up the chain of command if reporting to those below does not bring results. Republic Western employees such as plaintiff were informed that the company takes sexual harassment complaints "very seriously, and its policy is to take prompt action to resolve the matter." Further, Republic Western employees were provided the telephone numbers for reporting sexual harassment to the U-Haul Human Resources Department in Phoenix, 1-800-528-0463, ext. 6625 and 1-602-263-6625. This sexual harassment prohibition and reporting policy was communicated to Republic Western employees, including plaintiff, by way of a policy bulletin and employee handbook entitled U-Haul Welcome Aboard. See Republic Western policy prohibiting sexual harassment, Exhibit C; Welcome Aboard employee handbook, pgs. 15-16,

4

Exhibit D; plaintiff's first set of Interrogatories directed to defendants, Interrogatory No. 7 and Republic Western's response thereto, attached as Exhibit E; and defendants' Rule 26 Initial Disclosures, Subsection 1(B), items 2 and 23.

Plaintiff admits that she was aware of Republic Western's policy of reporting sexual harassment to a supervisor and if the employee is not satisfied to report the sexual harassment to the next level supervisor. Exhibit A, page 189, lines 2-7. Moreover, plaintiff's actions demonstrate her knowledge of Republic Western's harassment reporting policies. For instance, plaintiff utilized the 1-800 telephone number for reporting sexual harassment to U-Haul Human Resources Department in Phoenix the day after she was allegedly constructively discharged on August 28, 2000. Exhibit A, page 195, lines 7-10; fax note from plaintiff to Debbie Tooker, Human Resources, dated August 29, 2000 confirming telephone message to sexual harassment reporting hotline as well as hotline supervisor's email regarding same, both attached hereto as Exhibits G and H, respectively. Although plaintiff has not identified where she acquired her knowledge of Republic Western's sexual harassment reporting policy, she could not deny that she had received written papers regarding prohibition of harassment and reporting harassment. See Exhibit A, page 189, lines 13-22.

Prior to the plaintiff's alleged constructive discharge on August 28, 2000, plaintiff never attempted to contact Republic Western's Human Resources Department concerning the alleged sexual harassment which allegedly caused her constructive discharge. See Exhibit A, page 197, line 21 through page 198, line 1. In fact, plaintiff admits that she only reported the alleged

5

sexual harassment to three Republic Western employees:  Mr. Wallette, Mr. Sillari and Catherine McNeil.  See Exhibit A, page 189, line 23 through page 192, line 17, page 194, lines 3-18.  Mr. Wallete and Mr. Sillari, were plaintiff's immediate supervisor and next level-up supervisor, respectively, and plaintiff acknowledged that she did not receive any satisfaction from them after her verbal reports of sexual harassment.  See Exhibit A, page 192, lines 12-17 and page 194, lines 19-21.  Ms. McNeill was the home office technical supervisor located in Phoenix who dealt with the plaintiff regarding reserve issues.  Ms. McNeil was not plaintiff's supervisor nor was she supervisor of either Mr. Wallete or Mr. Sillari.  Plaintiffs have submitted a declaration of Ms. McNeil in support of her case which fails to identify any report of sexual harassment to Ms. McNeil.  See Exhibit I.

Republic Western's Human Resource Department launched an immediate investigation of plaintiff's alleged sexual harassment once it was reported to the sexual harassment hotline by plaintiff on August 29, 2000, the day after she was allegedly constructively discharged.  This investigation was conducted by Ms. Tooker, the employee relations manager located in Phoenix and consisted of interviews of plaintiff, Mr. Wallete, Mr. Sillari, Ms. McNeil as well as several other Republic Western employees located in plaintiff's office and in the home office.  See copies of Republic Western's Human Resources Department's investigation produced in discovery and attached as Exhibit J.

Plaintiff never returned to work at Republic Western after she was allegedly constructively discharged on August 28, 2000.  On or about June 6, 2002, plaintiff filed the

6

within complaint against Republic Western and Mr. Wallete with counts based upon Title VII of

the Civil Rights Act of 1964 (Title VII), the Pennsylvania Human Relations Act (PHRA), among

others.    See plaintiff's complaint attached as Exhibit K. Plaintiff's gender discrimination is

based upon an alleged hostile work environment which resulted in a constructive discharge. See

Exhibit K, paragraphs 4, 11, 14, 15, 19 and 22.  Republic Western was permitted by this Court to

assert the affirmative defense of *Ellerth/Faragher* due to decision of *Pennsylvania State Police v.*

*Suders,* 542 U.S. 129, 124 S. Ct. 2342, 2347, 159 L.Ed. 2d 204 (2004).  See Exhibit L, email

notice of Court's Order regarding this issue.

## II.    LEGAL ARGUMENT

### A.    Plaintiff's Title VII And PHRA Claims Against Defendant, Republic Western Insurance Company Should Be Dismissed Pursuant To The *Ellerth/Faragher* Affirmative Defense.

Plaintiff's complaint seeks recovery against Republic Western for gender discrimination

under Title VII of the Civil Rights Act of 1964 (Count I) and under the PHRA (Count II).[1]  Title

VII makes it "an unlawful employment practice for an employer . . . to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's . . . sex . . .."  42 U.S.C. §2000e-2(a)(1).  This language is not

limited to economic or tangible discrimination.   Instead, the phrase "terms, conditions or

privileges of employment" displays a congressional intent to "strike at the entire spectrum of

---

[1]    Courts uniformly interpret PHRA gender discrimination claims in conjunction with Title
VII and therefore this brief will address plaintiff's gender discrimination under a Title VII
analysis only. *See Gautney v. Amerigas Propane, Inc.*, 107 F.Supp. 2d 634, 640 (E.D.Pa. 2000).

7

disparate treatment of men and women in employment, which includes requiring people to work in a discriminatory hostile or abusive environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, (1993) (citations omitted). Plaintiff seeks to prove her Title VII and PHRA claims by demonstrating that she was constructively discharged due to a hostile work environment.

A plaintiff must show the following five factors to establish a hostile work environment sexual harassment claim: (1) the employee suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) and there is a basis for vicarious liability. *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001). Under a hostile work environment theory, an employee must be subjected in her place of work to "sexual harassment so pervasive that it created a hostile, intimidating, or offensive work environment." *Andrews v. City of Philadelphia.*, 895 F.2d 1469, 1482 (3d Cir. 1990). Such claims require a showing of severe or pervasive conduct. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). Beyond that, in order to establish a "constructive discharge," the plaintiff must show that the "abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pennsylvania State Police v. Suders,* 542 U.S. 129, 124 S.Ct. 2342, 2347, 159 L.Ed. 2d 204 (2004).

In a sexual harassment/constructive discharge claim based upon an alleged hostile work environment, a defendant employer is not liable under Title VII, however, if the employer establishes, by a preponderance of the evidence, that: (1) "it had installed a readily accessible

8

and effective policy for reporting and resolving complaints of sexual harassment, and (2) that the plaintiff unreasonably failed to avail herself of that employer-provided preventive or remedial apparatus." *Id.* This defense, commonly known as the *Ellerth/Faragher* affirmative defense, is not available to the employer "if the plaintiff quits in reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she would face unbearable working conditions." *Id.* Thus, an employer does not have the "*Ellerth/Faragher* affirmative defense at its disposal when a supervisor's official act precipitates the constructive discharge; absent such a "tangible employment action," however, the defense is available to the employer whose supervisors are charged with harassment." *Id.* at 2351.

A "tangible employment action" which precludes the *Ellerth/Faragher* defense has been described as a "significant change in employment status, such as hiring, firing, failing to promote, re-assignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 2353 (quoting *Ellerth*, 524 U.S. at 761). "Tangible employment actions" do not include: a heavier workload than others, requiring an employee to maintain a daily log of her work and work locations, not inviting an employee to meetings with vendors, taking an employee's office keys away when the locks were changed, not providing an employee with a performance evaluation and receipt of numerous critical, insulting e-mails from a supervisor. *Barra v. Rose Tree Media School District*, 858 A.2d 206, 216-17 (Pa. Cmwlth. Ct. 2004)(relying on *Suders*, 124 S.Ct. 2342).

9

The rationale supporting application of the *Ellerth/Faragher* defense in constructive

discharge/hostile work environment cases is based upon agency principles. *Suders*, 124 S.Ct. at

2352-53. Title VII is interpreted based upon agency principles. That is, an employer is liable for

acts of its agents which violate Title VII when the agent was "aided in accomplishing the tort by

the existence of the agency relationship." *Ellerth*, 524 U.S. at 758, 118 S.Ct. 2257 (quoting The

Restatement (Second) of Agency (1957) §219(2)(d)). When a supervisor, therefore, inflicts

injury upon one of his subordinates in the form of a "tangible employment action" that

supervisor is bringing the official power of the enterprise to bear and the employer is vicariously

liable under agency principles.

Applying the *Ellerth/Faragher* defense in the absence of a tangible employment action in

constructive discharge/hostile work environment cases advances the public policy goal of

deterring harassment by encouraging anti-harassment policies. *Id.* at 2353-54. Title VII's design

is to "encourage the creation of anti-harassment policies and effective grievance mechanisms."

*Id.* at 2353 (quoting *Ellerth*, 524 U.S. at 764)). Since the *Ellerth/Faragher* defense links an

employer's liability to its efforts to install preventative and corrective measures, it serves as a

deterrent to harassment and encourages employees to report harassing conduct before it becomes

severe or pervasive. *Id.* at 2353-54.

The *Ellerth/Faragher* defense also serves to promote the tort law doctrines of avoidable

consequences and mitigation of damages. By requiring employees to reasonably report

10

harassing behavior, the *Ellerth/Faragher* affirmative defense bolsters the duty of victims in tort law to avoid consequences or minimize their damages. *Id*. at 2354.

> 1.    **The *Ellerth/Faragher* Affirmative Defense Is Available To Republic Western Insurance Company Because Plaintiff's Alleged Constructive Discharge Was Not Precipitated By A Tangible Employment Action Taken By James Wallete.**

Plaintiff's employment status or situation was never officially changed by Mr. Wallete and, therefore, her "constructive discharge" was not based upon a "tangible employment action." Plaintiff was never demoted, she never received a cut in pay, she was never transferred to a different position, exposed to unbearable working conditions, passed over for a promotion, fired, sustained a reduction in benefits or reassigned to a position with significantly different responsibilities. Throughout the alleged period of sexual harassment, January 2000 through August 2000, plaintiff remained in her position as the litigation manager and continued to manage approximately four to five litigation representatives in her unit throughout this alleged period of harassment. Even if plaintiff's allegations are true that her check approval authority was briefly removed, she was required to report to an additional supervisor upon return from her FMLA leave, Mr. Wallete took on some of her responsibility for hiring defense counsel as well as interviewing and selecting new individuals in her unit, and Mr. Wallete took a more active personnel role with her unit, those activities do not constitute an "official change" in her employment status or situation. The actions taken by Mr. Wallete, if true, are more accurately compared to the supervisor's acts in the *Barra, ibid,* case wherein the Pennsylvania

11

Commonwealth Court found no tangible employment action.   The alleged acts of Mr. Wallete are not in the character of an "official act of the enterprise" which is ordinarily documented in official company records and may be subject to review by hirer level supervisors.   See, *Ellerth*, 524 U.S. at 762.   Thus, plaintiffs constructive discharge was not precipitated by a tangible employment action which would strip Republic Western of the *Ellerth/Faragher* defense.

## 2.   Republic Western Had Installed A Readily Accessible And Effective Policy For Reporting And Resolving Sexual Harassment Complaints.

It is undisputed in this case that Republic Western had instituted a policy prohibiting sexual harassment as well reporting and resolving such claims throughout the alleged period of harassment in this case, January 2000 through August 2000.   This policy acknowledged that sexual harassment may be caused by a supervisor or manager and, therefore, provided employees with the ability to report harassment directly to a higher level supervisor,  the  chairman of the board or the vice president of U-Haul Human Resources.   If reporting to a higher level supervisor "does not bring results," the employee is provided with the opportunity to report to the uppermost levels of the company in the form of the chairman and vice president.   This policy also acknowledges and eliminates the inherent difficulties with reporting sexual harassment within one's office by providing a hotline number for reporting sexual harassment to the company's headquarters in Phoenix, Arizona.   The policies were readily available to all Republic Western employees, including plaintiff, in the form of a policy bulletin and the Welcome Aboard employee handbook.   See Exhibits C and D.

12

These policies were demonstrated as effective by plaintiff herself in this case.    For instance, plaintiff readily obtained the anti-harassment hotline telephone number set forth in the policy, called that number, discussed her case with a hotline supervisor after business hours at 7:59 p.m. pacific time, and received a call from the employee relations manager, Ms. Tooker,  in the Phoenix headquarters the following day.    Ms. Tooker immediately instituted an investigation into plaintiff's claims on August 30, 2000.   Ms. Tooker's investigation consisted of extensive interviews with plaintiff, Mr. Wallete, Mr. Sillari, Ms. McNeil and at least six other employees of Republic Western located throughout the country through September 25, 2000.  See Exhibits G, H and J.   Plaintiff, however, never attempted to return to work at Republic Western and therefore the company was never presented with the opportunity to address plaintiff's work environment, if necessary.   Republic Western's anti-harassment policies and the demonstration of their effectiveness with respect to plaintiff's post-departure harassment claim establishes, as a matter of law, the reasonable care Republic Western took to prevent and correct promptly any sexually harassing behavior and, therefore, the first element of the *Ellerth/Faragher* defense is satisfied.

### 3.    Plaintiff Unreasonably Failed To Avail Herself Of Republic Western's Policy For Reporting And Resolving Sexual Harassment Complaints.

Despite of having knowledge of Republic Western's harassment reporting hotline, or at least the capability of locating the hotline, plaintiff chose not to report her harassment allegations to employees above the level of the harassers until the day after she left the company.    This was unreasonable.   Plaintiff claims that she sustained repeated and continuous harassment from Mr.

13

Wallete, Mr. Sillari and other males within the company for an almost eight-month period. Yet, she chose to ignore Republic Western's well-stated and readily accessible policy of reporting such activity to higher levels or Human Resources?   This ignorance was at the very least negligent.

If plaintiff's allegations are to be believed, she reported the harassment to the supervisors who were allegedly harassing her and when she was not satisfied with their response, she gave up.   Plaintiff was admittedly aware of Republic Western's policy for reporting harassment to a supervisor and if there was no satisfaction, to report it to the next higher level supervisor.   Thus, plaintiff patently disregarded what she believed the policy to be.   Query why?

Plaintiff's claim that she contacted Ms. McNeil regarding the harassment, even if true, was not a reasonable response to the alleged harassment.   Ms. McNeil was a home office technical supervisor located in Phoenix who was not a supervisor of either Mr. Wallete, Mr. Sillari or any of the co-workers which allegedly contributed to plaintiff's harassment.   Tellingly, Ms. McNeil's declaration submitted by plaintiff in this case does not identify any specific complaint plaintiff made to Ms. McNeil concerning sexual harassment.   See Exhibit I.   Again, even if plaintiff did make a report of sexual harassment to Ms. McNeil, plaintiff was aware that that was not the correct procedure.

Plaintiff's decision to follow Republic Western's harassment policy and report the harassment to the hotline the day after her last day of employment demonstrates her actual knowledge of the policies or, at the very least, her ability to avail herself of the policy.   Plaintiff

14

has not provided any reasonable excuse for not following this policy prior to her departure.  A

rational factfinder, therefore, will conclude that plaintiff willfully ignored a known anti-

harassment policies that were readily accessible and capable of addressing the very situation, *i.e.*

supervisor harassment, which led to her alleged constructive discharge.

  **4.  Dismissing Plaintiff's Title VII Claims and PHRA Claims Pursuant To The
*Ellerth/Faragher* Affirmative Defense Will Further Policies Of Preventing
Future Harassment, Avoiding Consequences And Mitigating Damages.**

  Republic Western implemented anti-harassment policies and effective grievance

mechanisms which satisfied one of Title VII's goals of promoting "conciliation rather than

litigation."  See, *Ellerth*, 524 U.S. at 764.  Plaintiff's ignorance of Republic Western's readily

accessible anti-harassment policies thwarts this goal and the *Ellerth/Faragher* affirmative

defense is in place to address this ignorance.

  The *Ellerth/Faragher* defense also emphasizes the well-established tort law doctrines of

avoiding consequences and mitigating damages.  Plaintiff's ignorance of Republic Western's

anti-harassment policies flaunted those policies as well.  Plaintiff willingly chose to disregard

harassment reporting policies which were in place to avoid the consequences of such behavior

and prevent future damages.

  **B.  Summary Judgment Is Appropriate On This Record.**

  Summary judgment is appropriate when there is no genuine issue of material fact which

is unresolved and the moving party is entitled to judgment as a matter of law.  Fed.  R. Civ. P.

56(c).  When a motion for summary judgment is made and supported as provided in the rules, an

15

adverse party may not rest upon the mere allegations or denials of the adverse party's pleading.

Fed. R. Civ. P. 56(e). The nonmoving party must show, by affidavits, pleadings, depositions,

answers to interrogatories and admissions on file that there is a genuine issue for trial. *Id.*

    The Supreme Court has ruled that in motions for summary judgment, a material fact is

one which might affect the outcome of the suit under relevant substantive law. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986). A dispute about a material fact is

"genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-

moving party." *Id.* at 248. Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Celotex Corp. v. Catrett*, 477

U.S. 317, (1986); *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

    In this case, no rational factfinder could find that Republic Western has not proven by a

preponderance of the evidence that the *Ellerth/Faragher* affirmative defense applies and each of

its elements. Summary judgment, therefore, is appropriate.

    First, the record is undisputed that plaintiff's alleged constructive discharge was not the

result of a "tangible employment action." Plaintiff's employment status was not significantly

changed by Mr. Wallete during the alleged eight-month period of harassment. Thus, the

*Ellerth/Faragher* defense is available.

    Second, the record is undisputed that Republic Western had in place policies prohibiting

sexual harassment and reporting, investigating and remedying sexual harassment. These

16

policies were known and/or readily accessible and proved to be effective as evidenced by Republic Western's prompt and thorough investigation of plaintiff's alleged harassment after her departure from the company.   No rational factfinder could find that those policies did not exhibit reasonable care.

Finally, the record is undisputed that plaintiff unreasonably failed to avail herself of those readily accessible policies in order to provide Republic Western the opportunity to remedy the situation, if necessary.   Plaintiff admits she was aware of the policy of reporting harassment up the chain of command if there was no satisfaction and her utilization  of the harassment reporting hotline demonstrates her knowledge of the policy or means to access it.   There is no genuine issue, therefore, that plaintiff acted unreasonably in failing to report the alleged harassment to those higher up the chain of command than the harassers or the Human Resources Department during the eight-month period of harassment.

17

## III.    **CONCLUSION**

Based upon the aforementioned arguments, defendant, Republic Western Insurance Company, respectfully requests that this Honorable Court grant it summary judgment as to plaintiff's Title VII and PHRA counts in plaintiff's Complaint.

> **Respectfully submitted,**
> **WHITE AND WILLIAMS LLP**
> **Attorneys for Defendants,**
> **Republic Western Insurance**
> **Company and James Wallete**
>
> BY: _____
> Robert G. Devine, Esq.
> Michael W. Horner, Esq.
> 1800 One Liberty Place
> Philadelphia, PA 19103
> (215) 864-7000

DATED: July 12, 2005

18

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LISA DOLAN COYLE | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | 02-CV-3619 |
| v. | : | |
| | : | |
| AMERCO t/a REPUBLIC WESTERN | : | |
| INSURANCE COMPANY and JAMES | : | |
| WALLETTE | : | |
| | : | |
| Defendant | : | |
| | : | |

## CERTIFICATE OF SERVICE

I, MICHAEL W. HORNER, hereby certifies that on this 12th day of July, 2005, a true and correct copy of the foregoing Motion for Summary Judgment was served via facsimile, electronic filing, regular mail, upon the following counsel of record:

Timothy M. Kolman, Esquire
**Timothy M. Kolman Esq & Associates**
225 N. Flowers Mill Road
The Shoppes at Flowers Mill
Langhorne, PA  19047


_____
Michael W. Horner, Esquire

DOCS_NJ 229831v1

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LISA DOLAN COYLE | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | 02-CV-3619 |
| v. | : | |
| | : | |
| AMERCO t/a REPUBLIC WESTERN | : | |
| INSURANCE COMPANY and JAMES | : | |
| WALLETTE | : | |
| | : | |
| Defendant | : | |
| | : | |

**ORDER**

AND NOW, this _____ day of _____, 2005,   upon consideration of defendant's Motion for Summary Judgment, and plaintiff's response thereto, it is hereby **ORDERED** that the motion is granted and that all counts against defendant, Republic Western Insurance Company, based upon Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act are hereby dismissed with prejudice.

**SO ORDERED,**

_____
                                    **U.S.D.J.**

DOCS_NJ 229831v1